# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00403-CR

### Ex parte Raul Saldana

### FROM COUNTY COURT OF LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CR-07-746768, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court granted Raul Saldana's application for writ of habeas corpus. Saldana had pleaded nolo contendere to charges of assault of a family member, but later contended that his counsel's failure to inform him how his plea would affect his immigration status amounted to ineffective assistance of counsel rendering his plea involuntary. The State appeals, arguing that Saldana's affidavit, in which Saldana states that he was misinformed as to the implications of his plea of nolo contendere, without corroborating evidence, was insufficient to meet his evidentiary burden. We affirm.

In October 2006, Saldana was charged by information with assaulting a family or household member. *See* Tex. Penal Code Ann. § 22.01(b)(2) (West Supp. 2009). Pursuant to a negotiated plea agreement, Saldana entered a plea of nolo contendere and was placed on deferred adjudication community supervision for one year. After he had completed the terms of his probation and was discharged, Saldana filed a writ of habeas corpus, arguing that his counsel's ineffective assistance rendered his plea of nolo contendere involuntary. *See* Tex. Code Crim. Proc.

Ann. art. 11.072 (West 2005) (setting out procedures for filing writ of habeas corpus in community supervision case). According to Saldana, his counsel had misinformed him as to the consequences of a plea of nolo contendere, affirmatively assuring him that his plea would have no effect on his immigration status. Saldana had later learned that his record could not be expunged and could adversely affect his immigration status, as his residence card was up for renewal. On June 18, 2009, the trial court granted habeas relief. In its order, the trial court vacated Saldana's plea and "restore[d] Saldana to his position before he entered such plea."

An applicant seeking habeas corpus bears the burden to prove his entitlement to the relief he seeks by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We review the evidence presented in the light most favorable to the trial court's ruling for an abuse of discretion. *Id.* In conducting our review, we afford almost total deference to the trial court's determination of the historical facts the record supports, especially when the fact findings require an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). The trial court's determinations of historical fact are entitled to some deference even when the court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts. *Manzi v. State*, 88 S.W.3d 240, 243-44 (Tex. Crim. App. 2002). We afford almost total deference to the trial court's application of the law to the facts if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App.

2

2007).  If the resolution of the ultimate questions turns on an application of legal standards, we review the determination de novo.  *Id.*

A defendant has a Sixth Amendment right to effective assistance of counsel in guilty-plea proceedings.  *Ex parte Reedy*, 282 S.W.3d 492, 500-01 (Tex. Crim. App. 2009).  However, courts have also held that while the Sixth Amendment assures an accused of effective assistance of counsel in criminal prosecutions, this assurance does not extend to collateral consequences of the prosecution.  *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).  Collateral consequences are consequences that are not definite, practical consequences of a defendant's guilty plea, including consequences controlled by agencies operating beyond the direct authority of the trial judge.  *Id.*; *State v. Jimenez*, 987 S.W.2d 886, 888-89 & n.6 (Tex. Crim. App. 1999).  A defendant is not required to be knowledgeable of a collateral consequence before his plea is to be considered voluntary.  *Morrow*, 952 S.W.2d at 536.

Although deportation has generally been considered to be a collateral consequence of a plea, *see Jimenez*, 987 S.W.2d at 888-89; *Morrow*, 952 S.W.2d at 536, the United States Supreme Court has recently held that, because of its "close connection to the criminal process" and the difficulty in classifying such consequence as either collateral or direct, "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Padilla v. Kentucky*,130 S. Ct. 1473, 1482 (2010).  In addition, misinformation—even regarding a matter about which a defendant is not entitled to be informed—may render a plea involuntary if the defendant shows that the plea was actually induced by the misinformation. *See Ex parte Moody*, 991 S.W.2d 856, 857 (Tex. Crim. App. 1999); *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App.

1984); *Rosa v. State*, No. 05-04-00558-CR, 2005 Tex. App. LEXIS 6924, at *7 (Tex. App.—Dallas Aug. 25, 2005, pet. ref'd) (mem. op., not designated for publication).

An applicant seeking habeas corpus relief on the basis of ineffective assistance of counsel must show that his counsel's performance was unconstitutionally deficient and that there is a reasonable probability—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance. *Padilla*, 130 S. Ct. at 1482 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005). Specifically, when a person challenges the validity of a plea entered upon the erroneous advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded as he did but, instead, would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Moody*, 991 S.W.2d at 857-58.

Saldana does not dispute that he was admonished by the trial court—both orally and in writing—that his plea of nolo contendere could result in his deportation, but he asserts that, in spite of the conflicting warnings from the court, he relied on the advice of his counsel, who assured him that the plea would not affect his immigration status. Saldana's affidavit, which was admitted into evidence, establishes that his immigration status was of utmost concern and, if he had known about the effect his plea would have, he would not have entered it. Saldana states, in part:

4

When my wife and I first visited with [trial counsel] we mentioned that our biggest concern was my immigration status. He told us he would do everything to resolve my case and my immigration status would not be [a]ffected. I am a lawful permanent resident alien.

. . . .

I pled guilty based on the understanding that it would have no adverse [e]ffect on my immigration status and that I could eventually get the record expunged. Had I know[n] that my status would have been jeopardized or that I could not get an expunction, I would not have entered a guilty plea.

Even in light of the uncontroverted evidence as to the advice Saldana received, the State argues that Saldana cannot meet his burden of proof. Because Saldana's affidavit is the only evidence in the record, the State contends, Saldana must be denied habeas corpus relief. In support of its argument, the State cites several cases that, it argues, stand for the proposition that the record must contain confirmation of the misinformation by counsel or documents augmenting the defendant's testimony that show the defendant was misinformed.

The State relies chiefly on *Fimberg v. State*, 922 S.W.2d 205 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Fimberg testified that, before a plea was entered, his counsel told him that the trial court would impose jail time if a jury found him guilty, even if the jury imposed probation. *Fimberg*, 922 S.W.2d at 206. According to Fimberg, his counsel also told him that he would be assessed probation without jail time if he pleaded guilty to the charges of attempted sexual assault. *Id.* As to the first statement, the court of appeals found that the plea was not involuntary, as the statement was not misinformation—the judge would have been able to impose jail time as a condition of probation and could announce this to Fimberg or his counsel. *Id.* at 208. As to the second statement, which could qualify as misinformation, there was conflicting evidence

5

in the record. *Id.* Fimberg's counsel denied having made the statement. *Id.* Given that the judge presiding at the proceeding on Fimberg's motion for new trial was able to evaluate the credibility of the witnesses who presented conflicting testimony, and given the absence of any independent corroborating evidence in the record indicating that Fimberg was misinformed, the court of appeals could not find an abuse of discretion in the trial court's decision to deny relief. *Id.* In making its determination, the court wrote:

> However exceptional the circumstances, a defendant's claim he was misinformed by counsel, standing alone, is not enough for us to hold his plea was involuntary. In cases in which a guilty plea has been held to have been involuntary, the record contains confirmation of the misinformation by counsel, or documents augmenting the defendant's testimony that reveal the misinformation and show its conveyance to the defendant.

Thus, in reaching its conclusion, the court's basis was not that confirmation by counsel or documents augmenting the defendant's testimony are always necessary, but that, given the conflicting evidence in the case, the absence of corroborating evidence, and the standard for review, there was no abuse of discretion. *Id.*

The State also relies on authority cited in *Fimberg*, including *Ex parte Griffin* and *Ex parte Burns*, 601 S.W.2d 370 (Tex. Crim. App. 1980). In *Ex parte Griffin*, Griffin pleaded guilty to burglary, but later claimed that the plea was invalid because the prosecutor had broken a promise it had made as part of the plea agreement. 679 S.W.2d at 16. The evidence showed a discrepancy in the terms of the plea bargain as understood by the State and the terms as understood by defense counsel and, in turn, conveyed to Griffin. *Id.* at 17. The court of appeals held that Griffin had met his burden to show that his plea was involuntary because the evidence showed that his counsel

6

misinformed him as to the existence of a term in the plea agreement. *Id.* at 18. Although the court's holding was based on Griffin's testimony, as corroborated by his defense counsel, the court made no blanket determination that, in all cases, such corroboration is necessary. Rather the court held that, on that record, in light of uncontroverted evidence that Griffin had been induced to plead guilty based on inaccurate information conveyed by defense counsel, Griffin had met his burden of showing by a preponderance of the evidence that his plea was not voluntary. *Id.* at 17-18.

In *Ex parte Burns*, Burns contended that his pleas of guilty on charges of assault and murder were not voluntary due to ineffective assistance of counsel, contending that counsel misinformed him as to the range of punishment that could be imposed. *Id.* at 370. According to Burns's counsel, he had advised Burns that, if Burns did not plead guilty, there was a good chance that he would get the death penalty. *Id.* at 371. However, that advice was given six months after the United States Supreme Court issued its decision in *Furman v. Georgia*, 408 U.S. 238 (1972), which made imposition of the death penalty in such circumstances unconstitutional. *Id.* Based on this evidence, the court of appeals found that Burns had shown that his guilty plea, made based on counsel's erroneous advice, was involuntary. *Id.* at 372. As in *Griffin*, however, the court made no determination as to what sort of evidence a defendant must present to meet his burden. Rather, the court determined that—on that record—which included the testimony of both Burns and his former attorney, Burns had met his burden. *Id.*

Consistent with the opinions in *Fimberg*, *Griffin*, and *Burns*, later cases impose no requirement that any particular type of evidence support a claim that a plea is involuntary due to ineffective assistance of counsel. Rather, these opinions note: "In cases holding a guilty plea to

be involuntary, the record contains confirmation of the misinformation by counsel, or documents augmenting the defendant's testimony that reveal the misinformation and show its conveyance to the defendant." *See, e.g.*, *Pena v. State*, 132 S.W.3d 663, 669 (Tex. App.—Corpus Christi 2004, no pet.); *Tabora v. State*, 14 S.W.3d 332, 337 n.7 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In *Tabora*, the case upon which the court in *Pena* relies, the court writes:

> However, a defendant's claim he was misinformed by counsel, standing alone, is not enough for us to hold his plea was involuntary. A claim for ineffective assistance of counsel must be affirmatively supported by the record. Therefore, in determining the voluntariness of a guilty plea, the court should examine the record as a whole. The record should focus specifically on the conduct of trial counsel. Such a record is best developed in the context of [an evidentiary] hearing on application for writ of habeas corpus or motion for new trial.

14 S.W.3d at 336 (internal quotation marks and citations omitted). Thus, even if confirmation of counsel or documents augmenting the defendant's testimony is generally the sort of evidence offered to support a defendant's claims in these cases, it remains that the only requirement in such cases is that the defendant meet his burden by a preponderance of the evidence, not that the evidence be anything in particular. *See Pena*, 132 S.W.3d at 669; *Tabora*, 14 S.W.3d at 336.

In *Pena*, there was no evidence at all to support the defendant's claim that he was misinformed by counsel or that he entered his plea of guilty based on any alleged misinformation. 132 S.W.3d at 669. In *Tabora*, it was clear from a review of the record of the sentencing hearing that trial counsel misunderstood either the charges pending against the defendant or the applicability of deferred adjudication community supervision. 14 S.W.3d at 336. From the record as a whole—not from the confirmation of counsel or other documents—the court concluded that counsel's

representation was, indeed, deficient under *Strickland. Id.* However, the only evidence to support the second prong of *Strickland*—that there is a reasonable probability that, but for counsel's error, the defendant would not have pleaded no contest but would have insisted on going to trial—was that trial counsel had requested "deferred" when, in fact, defendant was not eligible for deferred adjudication. *Id.* at 337. The court held that, although this might have been some evidence that Tabora was misled, there was no evidence showing that, even if he had been misled, he would not have entered a plea of no contest. *Id.* The court pointed out that no motion for new trial had been filed, and the only evidence available for review was the record of the trial. *Id.*

The State also cites *Rosa v. State*, the case relied on by the trial court in granting habeas relief. Rosa was charged with assault and assault family violence. 2005 Tex. App. LEXIS 6924, at *1. He pleaded guilty based on counsel's assurances that these were not deportable offenses. *Id.* at *2. As to Rosa's conviction plea on the family violence charge, the court found that the plea was involuntary based on the evidence that included counsel's confirmation that counsel had misinformed Rosa as to the immigration consequences. *Id.* at *9. However, the court reached a different conclusion as to the misdemeanor assault case, not because there was no corroborating testimony from counsel, but because even if Rosa's claims were true, there could be no misinformation, as misdemeanor assault is not a deportable offense. *Id.* at *10. The different results on the two charges did not turn on whether there was confirmation from counsel, as the State contends, but merely on the fact that there was no evidence of misinformation in the second instance, because counsel's statement that Rosa would not be deported was correct as to the misdemeanor assault offense. *Id.*

9

The parties also cite this Court's opinion in *George v. State*, No. 03-05-00415-CR, 2007 Tex. App. LEXIS 3860 (Tex. App.—Austin May 16, 2007, no pet.) (mem. op., not designated for publication). George asserted that ineffective assistance of counsel rendered his guilty plea for possession of a controlled substance involuntary, as counsel had assured him that, if he pleaded guilty, he would receive a probated sentence. *Id.* at *1-2, *9. George, however, submitted no evidence to support his claim. *Id.* at *6-7, *10-11. Although he had filed a motion for new trial, he never presented the motion to the court, and therefore, affidavits of his wife and brother corroborating his claim were never entered into evidence. *Id.* at *10-11. Aside from the affidavits, George pointed to no evidence in the record to support his claim, and we, therefore, found that the trial court acted within its discretion in concluding that George had not met his burden under *Strickland*. *Id.* at *7-11.

Each of these cited cases stands for the proposition that, to prevail on such claims, a defendant must meet his burden of showing by a preponderance of the evidence that (1) counsel's advice was outside the range of competence demanded of attorneys in criminal cases and, if so, (2) there is a reasonable probability that, but for counsel's errors, he would not have pleaded as he did but, instead, would have insisted on going to trial. *Hill*, 474 U.S. at 57. These cases require that sufficient evidence be submitted, but do not require that the evidence be of any particular type. In each of these cases, the trial court is free to believe or disbelieve the evidence. The key distinction between these cases and Saldana's is that—in each of the cited cases—it was the defendant appealing and, thus, the defendant's burden to show that the trial court had abused its discretion in its

10

evaluation of the evidence. Here, however, it is the State's burden to show that the trial court abused its discretion in evaluating the evidence and in granting habeas relief.

The State is correct that the defendant bears a heavy burden to show ineffective assistance of counsel under *Strickland*, which requires that our review in such cases be highly deferential and sets out a strong presumption that counsel rendered adequate assistance, making all significant decisions in the exercise of reasonable professional judgment. *See Strickland*, 466 U.S. at 669; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). However, our standard of review in a habeas proceeding is similarly deferential. As noted, we review the evidence presented in the light most favorable to the trial court's ruling and reverse only for an abuse of discretion. *Kniatt*, 206 S.W.3d at 664. Where, as here, we are reviewing the trial court's determination of historical facts that are supported by the record, we afford almost total deference to the trial court's determination of those facts especially when, as here, the fact findings require an evaluation of credibility and demeanor. *Amezquita*, 223 S.W.3d at 367. We also afford almost total deference to the trial court's application of the law to the facts if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819.

Here, the trial court was presented with Saldana's affidavit, in which Saldana averred that his counsel had misinformed him as to the effect his plea could have on his immigration status and that he would not have entered the plea if he had been accurately informed. The State presented no controverting evidence as to counsel's effectiveness. In addition, the record shows that both parties had repeatedly attempted to secure the presence of Saldana's trial counsel in the prior proceeding. Neither had been successful in speaking to the attorney despite repeated

11

attempts. Based on Saldana's affidavit that he received misinformation from his trial counsel and trial counsel's refusal to appear at the hearings despite the parties' repeated attempts to summon him, the trial court could have concluded that Saldana met his burden to show that counsel's performance was deficient and that Saldana would not have entered his plea but for the deficient performance. We afford almost total deference to these factual determinations and the trial court's application of the law to these facts. *Amezquita*, 223 S.W.3d at 367; *Peterson*, 117 S.W.3d at 819. Given this deferential standard of review and our conclusion that a defendant is required to present no specific type of evidence to meet his burden of proof under *Strickland*, we cannot conclude, on this record, that the trial court abused its discretion in granting habeas relief. Accordingly, we overrule the State's issue.

Having overruled the State's issue, we affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   July 16, 2010

Do Not Publish

12